```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KAREN P. FERNBACH, Regional Director,
Region 2, National Labor Relations Board, For
and on Behalf of the NATIONAL LABOR
RELATIONS BOARD,

                    Petitioner,                       17-cv-5694 (PKC)

       -against-                                      MEMORANDUM
                                                      AND ORDER

ARBOR RECYCLING and ARBOR
LOGISTICS, as a Single Employer,

                    Respondent.
-----------------------------------------------------------x
```

CASTEL, Senior District Judge:

       Karen Fernbach, the Regional Director of Region 2 of the National Labor Relations Board (the "NLRB" or the "Board") brings this petition for a temporary injunction under § 10(j) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 160(j), to require Arbor Recycling and Arbor Logistics, doing business as a single employer, to reinstate two employees terminated approximately one year ago and to refrain from engaging in various actions that violate §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3).

BACKGROUND

       A trial on this matter was held before Administrative Law Judge ("ALJ") Kenneth Chu from May 22 through May 24, 2017, and on July 13, 2017. (Petition for Temporary Injunction under Section 10(j) of the National Labor Relations Act, July 27, 2017, Dkt. 1 ("Petition") at Exs. A-D.) Petitioner requests that, pending final disposition before the Board, the Court enjoin Arbor Recycling and Arbor Logistics from engaging in certain unfair labor practices in violation of §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3). (Petition

at 10.) Petitioner also requests that the Court order the reinstatement of Jose Urbaez and Rafael Guance (the two terminated employees), the posting of copies of the Court's order at Arbor Recycling and Arbor Logistics where employees can see it, that the order be read to the employees in the presence of the NLRB, and that Arbor Recycling and Arbor Logistics file an affidavit stating their compliance with the order. (Petition at 10-11.)

The Court held a hearing on this matter on August 31, 2017. The NLRB offered as evidence, without objection, the record in the administrative proceeding before the ALJ, (Petition at Exs. A-F), an affidavit by Cosmo Lubrano, president of Amalgamated Local 1931, dated July 20, 2017, (Petition at Ex. 20), and an affidavit by Nora Roa, a business agent of the East Joint Board, dated July 17, 2017, (Petition at Ex. 21.) Respondent offered no additional evidence. No party sought to offer live testimony. The following facts are based on the record from the trial held before ALJ Chu. As described below, the Court affords considerable deference to the NLRB's version of events, which it accepts as true for the purposes of this motion so long as there is any supporting evidence in the record.

I. Respondent's Business and Facilities.

Respondents Arbor Recycling and Arbor Lite Logistics (together, "Arbor Recycling") are two affiliated business enterprises with common ownership, directors, and management, which have interrelated operations in the collection, transportation, and recycling of plastic, glass, and aluminum materials. (Tr. 9.)[1] Arbor Recycling has its main office at 720 Garrison Avenue, Bronx, New York and two processing facilities nearby at 1111 and 1120 Grinnell Place, which are across the street from one another, and additionally maintains an office and processing plant at 135 Pioneer Drive, Bay Shore, New York. (Tr. 26-28, 142.)

---

[1] Citations to "Tr." refer to the transcript of the trial before ALJ Chu contained in Exs. A-D of the Petition.

The Bronx facilities employ approximately eighteen warehouse workers, fifteen drivers, ten driver helpers, and a single mechanic. (Tr. 30, 32, 33.) The Bronx facilities also maintain fourteen trucks and two balers, one in each building. (Tr. 28, 31.) Due to the fact that the Bronx location is split into two facilities separated by a public street, it is necessary for employees and managers to move between both buildings. (Tr. 27, 444.)

At the Bay Shore facility there are twelve warehouse employees, eight drivers, and four driver helpers. (Tr. 30, 32.) There is no mechanic. (Tr. 33.) Arbor recycling maintains eight trucks and one baler at Bay Shore. (Tr. 29, 32.)

II.  <u>Union Organizing.</u>

In June 2016, Amalgamated Local 1931 (the "Union) began organizing Arbor Recycling's approximately sixty-eight warehouse workers, drivers, driver helpers, and mechanic at both its Bronx and Bay Shore facilities. (Tr. 296.) On numerous occasions between June and August 2016 Union representatives either stood in front of Arbor Recycling's Bronx facilities or down the block at a corner in order to talk to employees. (Tr. 49, 77, 79, 180, 297, 299, 301, 310, 322.)

On July 18, 2016, Union officials visited Arbor Recycling's Bronx facility and spoke to employees about the Union on the corner of Grinnell Place and Garrison Avenue. (Tr. 301-02.) At least one agent and one manager of Arbor Recycling were present with employees who spoke to Union representatives. (Tr. 301-02.) An agent of Arbor Recycling videotaped Union representatives standing on the street in front of Arbor Recycling's Bronx facility the next day. (Tr. 310-12)

On July 25, 2016, Union organizers went to Arbor Recycling's Bronx facility to talk to night shift warehouse employees and set up a table to serve food. (Tr. 373.) A manager videotaped the union representatives speaking with employees. (Tr. 323-26.)

Arbor Recycling challenges this evidence, contending that no videos or photographs were taken of employees, but that on one occasion a manager used his smartphone camera to photograph union organizers who were harassing a truck driver. (Resp.'s Mem. in Opp., August 11, 2017, Dkt. 9 at 8-9.) Respondent claims that these organizers were not in the presence of Arbor Recycling employees. (Id.) Arbor Recycling further argues that managers never surveilled or intentionally watched employees' interactions with union organizers, but that in the normal course of business they walk back and forth between the two properties, which are located on both sides of the street on which the union organizers were positioned. (Id. at 11.)

On numerous occasions managers interrogated employees about their support for the Union and threatened employees with loss of wages and discharge because of union activity. (Tr. 87-88, 90, 186-87, 193-94, 197-99, 204-05). The NLRB argues that Guance and Urbaez were discharged in retaliation for union activities. Arbor recycling challenges this contention.

a. <u>Discharge of Guance.</u>

Guance was employed by Arbor Recycling as a warehouse worker, and then a driver helper, from approximately June 9, 2015 until his discharge on September 7, 2016. (Tr. 76, 99, 101.) At the trial before the ALJ, Guance testified that he was observed by management talking to Union representatives in August 2016, when he received a showing of interest card. (Tr. 77-80.) Guance was later observed by management speaking to other employees about working conditions and was told multiple times that signing a union card could cause him problems with the company. (Tr. 86-88.) Guance testified that he was asked by a manager if he

had signed a union card and he responded that he had. (Tr. 90.) Arbor Recycling challenges this version of events, as no one could confirm the existence of a signed union card and because the Union did not solicit cards in August 2016. (Resp.'s Mem. in Opp., August 11, 2017, Dkt. 9 at 1.)

On September 6, 2016, Guance was working with a driver picking up materials for a client when the driver backed the truck into a cement pillar at the client's entrance, damaging the truck. (Tr. 91-92.) Guance testified that the driver, worried that he could lose his job, proposed that the men lie and claim that another truck had hit them. (Tr. 91-93.) Guance and the driver called David Vega, assistant to manager David Vallejo, and told him that they had been the victims of a hit and run. (Tr. 93-95, 517-18.) The driver filed a police report to that effect. (Tr. 93-94.) Though present while the driver filed the report, Guance did not speak to the police. (Tr. 93-94.) The next day Vega examined the truck, determined the damage was not consistent with a hit and run, and informed Vallejo, who interrogated Guance further. (Tr. 94-95, 518-19.) Guance stuck to his lie, elaborating that a "truck from Hinski" had hit them. (Tr. 95, 460.) Vallejo next confronted the driver, who ultimately revealed the truth. (Tr. 463.) Vallejo then fired Guance; the driver was not terminated. (Tr. 96, 463-64.) Arbor Recycling contends that Guance was fired solely because he lied. The NLRB argues that he was fired in retaliation for his union activities.

b. Discharge of Urbaez.

Urbaez was employed by Arbor Recycling from June 2015 until his discharge on October 14, 2016. (Tr. 172.) Urbaez was the sole mechanic at the Bronx facility. (Tr. 173-74.)

Urbaez first met with Union representatives in early June 2016 outside of the Bronx facility, and signed a union card that same day. (Tr. 180-81.) Urbaez testified that in July

2016 he told a manager that he had signed a union card and that this manager and others started criticizing Urbaez's work performance afterwards, telling him that he could be suspended for signing a union card. (Tr. 185-86, 197-99, 201.) One manager criticized Urbaez and other employees' decisions to sign union cards and told them that their salaries could be lowered for doing so. (Tr. 193-94.) Another manager told Urbaez that employees who signed union cards would be fired, as did a different manager in October 2016. (Tr. 196, 204-05.) Urbaez was discharged on October 14, 2016; the discharge paperwork stated that he was terminated due to poor work performance and disrespect to coworkers. (Petition at Ex. E.) The NLRB argues that this was a pretense and that Urbaez was actually terminated in retaliation for his union activities. Arbor Recycling argues that there had been ongoing problems with Urbaez's attitude and performance, including an incident in March 2016, after which he had been suspended for refusing a supervisor's direct order to purchase parts for a truck. (Resp.'s Mem. in Opp., August 11, 2017, Dkt. 9 at 5.) Arbor Recycling claims that it had been searching for a replacement mechanic ever since this incident. (Id. at 6.)

III.    <u>Union Election.</u>

On July 27, 2016, the Union filed a representation petition seeking to represent Arbor Recycling's employees. (Petition at Ex. 20, Aff. Of Cosmo Lubrano ¶ 3.) On January 19, 2017, the parties entered into a Stipulated Election Agreement for an election to be held on February 14, 2017. (Id. at ¶ 7.) In January and February 2017 Arbor Recycling instructed its Bay Shore drivers and warehouse employees to meet with labor consultants who told them that the Union was corrupt and would not provide any benefits to employees. (Tr. 146-158.)

The Union then lost confidence in its support among the workforce. (Pet.'s Mem. in Supp. July 31, 2017, Dkt. 8 at 13.) Employees stopped talking to Union representatives who

were positioned outside or on the streets between the Arbor Recycling properties. (Tr. 331.) They would point to a camera on the building or at managers in front of the building as they walked by the representatives. (Tr. 331.) In January 2017 a Union representative went to the Bay Shore location to speak to employees about the union election, where employees refused to speak with her, telling her they were afraid of losing their jobs if they became involved with the Union. (Petition at Ex. 21, Aff. Of Nora Roa ¶ 3.) On February 10, 2017, the election was cancelled. (Petition at Ex. 19.) The NLRB claims that subsequently management coerced employees into signing a petition revoking their support for the union. (Tr. 158-59.)

LEGAL STANDARD

The Second Circuit's "two-prong standard for § 10(j) injunctive relief is well established: 'First, the court must find reasonable cause to believe that unfair labor practices have been committed. Second, the court must find that the requested relief is just and proper.'" Kreisberg v. HealthBridge Mgmt., LLC, 732 F.3d 131, 141 (2d Cir. 2013) (quoting Hoffman v. Inn Credible Caterers, Ltd., 247 F.3d 360, 364-65 (2d Cir. 2001)). A district court must "give considerable deference to the NLRB Regional Director" when making its reasonable cause determination. Hoffman, 247 F.3d at 365. "[W]ith respect to issues of fact, the Regional Director should be given the benefit of the doubt . . . ." Id. The court should draw all factual inferences in favor of the Board and accept its version of events so long as it is "within the range of rationality." Kaynard v. Mego Corp., 633 F.2d 1026, 1031 (2d Cir. 1980.) "[O]n questions of law, the Board's view should be sustained unless the court is convinced that it is wrong." Hoffman, 247 F.3d at 365.

"[I]njunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo." Id. at 368. "While this standard preserves

traditional equitable principles governing injunctive relief," the Second Circuit instructs district courts to be "mindful to apply them in the context of federal labor laws." Id. "[T]he appropriate test for whether harm is irreparable in the context of § 10(j) . . . cases is whether the employees' collective bargaining rights may be undermined by the . . . [asserted] unfair labor practices and whether any further delay may impair or undermine such bargaining in the future." Kreisberg, 732 F.3d at 142 (quoting Hoffman, 247 F.3d at 369) (alterations and omissions in original). "[T]he appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred." Id. at 142-43 (quoting Hoffman, 247 F.3d at 369) (alteration in original).

Second Circuit precedent emphasizes that the purpose of a § 10(j) injunction is to preserve circumstances on the ground with respect to relations between the employer and workforce that are favorable to union formation but may be undermined by unfair labor practices absent an injunction. See Paulsen ex rel. NLRB v. Remington Lodging & Hosp., LLC, 773 F.3d 462, 469 (2d Cir. 2014) ("[T]he main focus of a § 10(j) analysis should be on harm to organizational efforts. . . . [D]elay is a significant concern because the absence of employees who support a union can quickly extinguish organizational efforts and reinforce fears within the workforce concerning the consequences of supporting a unionization campaign."). However, "an injunction under § 10(j) is an extraordinary remedy," Kreisberg, 732 F.3d at 141 (internal quotation marks omitted), and should be withheld unless doing so would severely undermine the efficacy of relief granted after a ruling on the merits, see Hoffman, 247 F.3d at 369 (granting § 10(j) injunction where the alleged unlawful labor practices "threatened to render the Board's processes totally ineffective by undermining the force of its remedial power").

DISCUSSION

The Court is cognizant that, in the context of proceedings under § 10(j) of the Act, "in the interval between the grant of an injunction and final adjudication by the Board, the rights of the parties will have been determined by a court rather than by the expert agency established by Congress." Kaynard, 633 F.2d at 1035. ALJ Chu will make a determination on the merits of the claims and defenses in the near future. ALJ Chu, an expert in labor law, who has had the benefit of observing witnesses and hearing live testimony, is in a far better position than this Court to determine whether Arbor Recycling has violated the Act, and if so, design an appropriate remedy. When ruling on a request for a § 10(j) injunction, a district court makes no finding regarding whether unfair labor practices have actually occurred; rather, it determines only whether there is "reasonable cause to believe that unfair labor practices have been committed." Kreisberg, 732 F.3d at 141. As described above, this is a low bar to clear and significant deference is shown to the NLRB.

In this case, the NLRB's version of events was strongly contested by Arbor Recycling, and in many cases, the NLRB appears to have credited testimony and chosen among conflicting evidence to produce a narrative that the Court does not find in all respects convincing. However, in view of the substantial deference this Court is required to afford the NLRB's factual contentions, and with knowledge that the final findings of fact are left in the capable hands of ALJ Chu, the Court finds that there is reasonable cause to believe that Arbor Recycling's actions have violated §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3).

I. <u>Arbor Recycling's Alleged Violations of § 8(a)(1) of the Act.</u>

The Court finds it just and proper to grant, in part, the NLRB's requested injunctive relief with respect to Arbor Recycling's alleged violations of § 8(a)(1) of the Act. If

Arbor Recycling engaged in the unfair labor practices alleged, including interrogating employees regarding their union activities, surveilling said union activities, and threatening employees with termination or lost wages if they joined the Union, these practices likely had a chilling effect on unionization efforts among its workforce.  In order to preserve the status quo with respect to the workforce's predisposition in favor of (or against) unionization as it existed before the implementation of these unfair labor practices, a § 10(j) injunction enjoining these practices is appropriate relief.

      II.         Reinstatement of Guance and Urbaez.

While it is a close question, the Court concludes that Guance and Urbaez were terminated in retaliation for union activities in violation of § 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3).  However, the Court declines to order their reinstatement because such relief would not be just and proper.

There has been no evidence whatsoever that these employees were actively involved with the Union as organizers or in recruiting other employees.  The NLRB produced no evidence of union activity by these employees beyond their signing union cards.  There is little evidence that their termination did anything to chill unionization efforts among employees; assuming that other employees even connected their termination to their union participation, the NLRB asserts that it was not until January 2017, months after the terminations, that the Union lost confidence in its support among employees.  Reinstatement would thus neither preserve the status quo nor prevent irreparable harm, for, whatever the workforce's favorability towards unionization was before the unfair labor practices, Guance and Urbaez did nothing to facilitate unionization, and their termination did little or nothing to hinder it.

Further, Arbor Recycling has brought forth substantial evidence indicating that reinstating either employee would impose a significant hardship on the company. It is undisputed that Guance repeatedly lied to management about a traffic accident, a serious matter, and was present for the filing of a false police report, an even more serious matter. Arbor Recycling presented evidence that Urbaez's poor work performance had negatively affected the productivity of the company. The just and proper standard for injunctions under § 10(j) "preserves traditional equitable principles governing injunctive relief," Hoffman, 247 F.3d at 368, and in these circumstances it would be inequitable to require Arbor Recycling to bear the hardship that reinstating these two former employees would entail. Of course, the ALJ who heard the witnesses is free to come to a different conclusion.

CONCLUSION

Petitioner's application for temporary injunctive relief pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), is granted in part and denied in part. Arbor Recycling is hereby enjoined from engaging in unfair labor practices in violation of §§ 8(a)(1) or (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3), and specifically the following: 1) discharging its employees because of their union activities; 2) engaging in surveillance of its employees because of their union activities; 3) interrogating its employees about their support for the Union; 4) threatening employees with discharge, unspecified reprisals, and loss of wages because of their union activities; 5) instructing employees to sign a document, or documents, which purport to revoke their support for the Union; or 6) in any like or related manner interfere with, restrain, or coerce employees in the exercise of their rights guaranteed them by § 7 of the National Labor Relations Act, 29 U.S.C. § 157.

Arbor Recycling is further ordered to post copies of this Memorandum and Order in a place or places where notices to its employees are customarily posted, pending further order of this Court. All other requested relief is denied.

The Clerk of the Court is directed to terminate Dkt. No. 6.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 26, 2017